**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Kathryn M. Armstrong,

Plaintiff,

v.

The Rose Law Firm, P.A.,

Defendant.

Civil File No. 00-2287 (MJD/SRN)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons that follow, the Court grants Plaintiff's motion and denies Defendant's motion.

## BACKGROUND

Plaintiff Kathryn M. Armstrong ("Plaintiff") commenced this action against Defendant The Rose Law Firm, P.A. ("Defendant") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and Minnesota Statute § 332.50. In November 1999, Plaintiff wrote a check for $24.11 to Minneapolis Moto Mart for gasoline and cola. The check was returned for insufficient funds. Moto Mart turned the check over to Bonded Account Services, Inc. ("BAS"), for collection, who attempted to collect on the check without success. BAS sent Armstrong a notice of dishonor on June 17, 2000. Armstrong did not reply to that letter or otherwise make payment in response to the notice of dishonor. On August 1, 2000, Armstrong's check was referred to Defendant, as

MAR 7 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Moto Mart had previously executed a Retainer Agreement with Defendant.

On August 10, 2000, Defendant sent a dunning letter to Armstrong. That letter indicated that Defendant had been "retained to represent the original creditor listed below as to your returned check." (Letter of August 10, 2000). The letter listed the following information:

| | | |
|---|---|---|
| Agency: BONDED ACCOUNTS SERVICE/ | | |
| Firm File #: 204626 | Amount Referred: | $44.11 |
| Check Date: 111399 | Penalties: | $100.00 |
| Original Creditor: MINNEAPOLIS MOTO MART | Settlement Offer: | $144.11 |

(Id.) The letter then stated:

> The above settlement offer includes the following: the face amount of your worthless check, a service charge of $20.00, and civil penalties pursuant to Minnesota State Law of up to $100.00 or the face value of your worthless check, whichever is greater. This is an offer of settlement and not a demand for payment. No court costs or attorneys fees are requested at this time. . . .

(Id.)

On October 11, 2000, Armstrong served a Summons and Complaint on Defendant, and on March 19, 2001, Armstrong served an Amended Complaint of Defendant, alleging violations of the FDCPA and Minn. Stat. § 332.50. On June 23, 2001, Armstrong remitted a money order to Defendant in the amount of $44.11. The money order has not yet been negotiated. Defendant now moves for summary judgment. Plaintiff opposes Defendant's motion for summary judgment, and instead, requests that the Court enter summary judgment in her favor.

## DISCUSSION

### A. Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik, 47 F.3d at 957. The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

### B. Debt

Defendant first argues that the FDCPA does not apply to the instant action. Defendant argues that if the tender of a worthless check is a criminal or tortious act, then the obligations arising from that check do not constitute a "debt" under the FDCPA. In this case, Defendant argues that Armstrong committed fraud and a tort under Minnesota law by issuing a worthless check. Despite Defendant's effort to distinguish this case, the Eighth Circuit has already addressed this issue. In Duffy v. Landberg, 133 F.3d 1120 (8th Cir. 1998), the

Eighth Circuit made clear that with respect to the FDCPA:

> ...courts generally will not create a fraud exception where none exists in the text of the statute. The wrong occasioned by debtor fraud is more appropriately redressed under the statutory and common law remedies already in place, not by a judicially-created exception that selectively give a green light to the very abuses proscribed by the Act.

Id. at 1124 (citations and quotations omitted.) Accordingly, the Court concludes that the FDCPA applies to this action.

**C. Violation**

In Count 1 of the Amended Complaint, Plaintiff alleges that Defendant's August 10, 2000, dunning letter violates 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692a(5), 1692f, 1692f(1), 1692g, and 1692g(a)(1) of the FDCPA. Defendant argues that Defendant's letter does not violate the FDCPA.

The FDCPA is designed to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage. 15 U.S.C. §1692(e). To this end, the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e and 1692e(10). The FDCPA also prohibits debt collectors from threatening to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. §1692e(5).

Further, the FDCPA prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principle obligation) unless such amount is expressly

authorized by the agreement creating the debt or permitted by law." 15 U.S.C § 1692f(1).

Finally, the FDCPA provides that:

> [w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--(1) the amount of the debt.

15 U.S.C § 1692g(a)(1).

Whether a debt collector has violated the FDCPA is determined from the perspective of the unsophisticated consumer. Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000). This test is designed to protect consumers of below average sophistication or intelligence, but it also contains an objective element of reasonableness that prevents liability for bizarre or idiosyncratic interpretations of collection notices. Peters v. Gen. Serv. Bureau, Inc. – F.3d –, 2002 WL 99805, *2 (8th Cir. 2002)(citation and quotation omitted). Essentially, Plaintiff here claims that Defendant violated the FDCPA by failing to state the amount of her debt in the letter, demanding an amount in the letter that was not authorized by law, and as a result, writing a misleading and deceptive letter.

**1. Amount of debt**

Recently, in Sonmore v. CheckRite Recovery Serv., Inc., 2001 U.S. Dist. LEXIS 14688, No. 99-2039 (D. Minn. Aug. 6, 2001), Judge Alsop determined that a debt collector failed to send Plaintiffs the requisite written communication stating the amount of the debts. Id. at *19-20. The court concluded that the dunning letters would confuse the

unsophisticated consumer, as the letters contained two columns of figures totaling different amounts. Id. at *23. One column labeled "SETTLEMENT OFFER" contained an offer to settle Plaintiffs' debts for an amount equaling the check amounts, a $20 service charge, and a $100 civil penalty. Id. at *21. The second column labeled "TOTAL LIABILITY UNDER STATE LAW IF A JUDGMENT IS ENTERED" listed the same items in column one, plus $30 for the cost of collection, $50 in civil theft damages, and $150 for estimated court costs. Id. The total amount in the second column was $210 more than the total in the first column. Id. The court determined that "[w]hen presented with the two columns of figures, the unsophisticated consumer would be uncertain of the amount of debt he or she actually owed and would be 'scratching his [or her] head upon receipt of such a letter.'" Id. at *23 (citation omitted).

In this case, the Firm's dunning letter indicates that the correspondence pertains to Plaintiff's returned check. The letter lists the original creditor and check date. Unlike the letters in Sonmore, the letter in this case contains only one column and one set of figures. That column lists an "amount referred" of $44.11, "penalties" of $100.00, and a "settlement offer" of $144.11. The letter goes on to indicate that the settlement offer includes the face amount of Plaintiff's worthless check, a service charge of $20.00, and civil penalties pursuant to Minnesota State Law of up to $100.

The FDCPA requirement that a debt collector give a debtor written notice of the amount of debt owed is designed to avoid confusing, fraudulent, and coercive debt collection

practices. See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C., 214 F.3d 872, 875 (7th Cir. 2000). In order for the notice to be meaningful, the information must be conveyed in such a manner as to secure the understanding of the unsophisticated consumer. Sonmore at *23. Thus, to meet the requirements of the statute:

> a debt collector must be explicit regarding the amount owed. A statement advising a consumer of the amount he or she owes, to be valid, must be effective, and it cannot be cleverly couched in such a way as to eviscerate its message. To protect the uninformed, the naive, and the trusting–the sort of people who easily fit under the umbrella of the 'unsophisticated consumer'–the notice cannot be...misleading and tricky. Having informed the debtor of his or her debt, the debt collector remains at liberty to offer to settle debts and to inform debtors of additional potential liabilities that may be incurred consistent with the law.

Sonmore at *23-24 (citation and quotation omitted.) The Court finds that the Firm's letter is not sufficient to meet the notice requirements of the FDCPA, and therefore, could mislead the unsophisticated consumer. The Firm's letter does not explicitly state the "amount of debt." Furthermore, the letter does not provide an explanation of the service charge and does not indicate that Plaintiff actually owes that amount or that the service charge is now included in the debt. See Sonmore at *22. Defendant confuses the matter further when on one page of its brief, it argues that Plaintiff was able to determine the amount of the debt because she remitted a money order for $44.11 (Def. Mem. at 11), and on another page of its brief, it argues that Plaintiff knew the amount of debt because she submitted a money order in the amount of $24.11 (Def. Mem. at 15). The unsophisticated consumer should not be required to subtract numbers ($44.11 "amount referred" minus $20.00 "service charge")

to determine the amount of debt. Assuming that the service charge is now part of the debt (the dunning letter does not make this clear), the unsophisticated consumer should not be required to consult a dictionary to determine that "amount referred" really means the debt owed. The Firm's letter could easily be altered to remedy this defect. In its current form, the Firm's letter could be misleading.

The Firm argues that Plaintiff's payment of $44.11 indicates that she was easily able to discern the amount of debt. The Court disagrees, not only for the reasons stated above, but also because Plaintiff paid this amount after she had the benefit of consultation with counsel. Furthermore, that Plaintiff is a seasoned debtor and commenced at least four other actions against debt collectors in this district has no bearing on whether Defendant violated the provisions of the FDCPA.

**2. Amount Not Authorized By Law**

Plaintiff's next claim is that Defendant violated the FDCPA by demanding an amount not authorized by Minnesota law. Specifically, Defendant argues the letter makes a false representation of the status of the debt by showing that there are $100.00 in penalties owing. Defendant further argues that the letter does not indicate that the civil penalty has not yet been awarded by a court.

Minn. Stat. § 332.50 subd. 2 provides that:

> [w]hoever issues any check that is dishonored is liable for the following penalties: (a) A service charge, not to exceed $30, may be imposed immediately on any dishonored check by the payee or holder of the check, regardless of mailing a

> notice of dishonor, if notice of the service charge was conspicuously displayed on the premises when the check was issued. Only one service charge may be imposed under this paragraph for each dishonored check. The displayed notice must also include a provision notifying the issuer of the check that civil penalties may be imposed for nonpayment.
> (b) If the amount of the dishonored check is not paid within 30 days after the payee or holder has mailed notice of dishonor pursuant to section 609.535 and a description of the penalties contained in this subdivision, whoever issued the dishonored check is liable to the payee or holder of the check for:
> (1) the amount of the check, the service charge as provided in paragraph (a), plus a civil penalty of up to $100 or the value of the check, whichever is greater. In determining the amount of the penalty, the court shall consider the amount of the check and the reason for nonpayment. The civil penalty may not be imposed until 30 days following the mailing of the notice of dishonor. A payee or holder of the check may make a written demand for payment of the civil liability by sending a copy of this section and a description of the liability contained in this section to the issuer's last known address. Notice as provided in paragraph (a) must also include notification that additional civil penalties will be imposed for dishonored checks for nonpayment after 30 days...

Id.

The Eighth Circuit has interpreted the language of this provision of the Minnesota Statutes recently in two separate cases. In Duffy, the Eighth Circuit noted that under Minnesota law, the issuer of a dishonored check may be liable for a civil penalty *"up to* $100." 215 F.3d at 874. The Eighth Circuit reasoned:

> Although the distinction between saying a debtor is liable under Minnesota law for $100 and the actual provision that the debtor is liable for *up to* a $100 civil penalty is a subtle one, we find there is, in fact, a difference. It is not certain that a Minnesota court would impose the entire $100 penalty in any given situation. In fact, it is probably unlikely in the case of a $10 bad check.

Id. More recently, in Picht v. Hawks, 236 F.3d 446, 450 (8th Cir. 2001), the Eighth Circuit reiterated that "the penalty authorized by section 332.50 does not automatically entitle

[Defendant] to recovery of the full $100 per dishonored check," and "the statue requires a judicial determination of the appropriate penalty amount." Id.; see also Sonmore v. CheckRite Recovery Serv., Inc., 2000 U.S. Dist. LEXIS 16270, No. 99-2039, at *14 (D. Minn. Oct. 25, 2000)(concluding that when a debt collector asserts that the Minnesota statute establishes a civil penalty "equal to" $100.00, the debt collector violates the FDCPA).

In this case, the dunning letter lists "Penalties: $100.00" and later reads "[t]he above settlement offer includes . . . civil penalties pursuant to Minnesota State Law of up to $100 . . ." The language "up to $100" is itself an accurate statement of the law, and therefore in that respect, the language is different from that contained in the letters in Duffy and Sonmore. Indeed, as Judge Alsop noted, "[u]nder Minnesota law, there may be nothing wrong with a debt collector asking for a $100.00 civil penalty." Sonmore, 2000 U.S. Dist. LEXIS 16270 at *14, *18.

However, Defendant's demand in this case was misleading because it failed to comply with the additional requirements of Minn. Stat. § 332.50 subd. 2(b)(1). Minn. Stat. § 332.50 subd.2(b)(1) provides that "[a] payee or holder of the check may make a written demand for payment of the civil liability **by sending a copy of this section and a description of the liability contained in this section** to the issuer's last known address." Id. (emphasis added). Defendant did not send a complete copy of the required section with the demand letter. Rather, the version of that section Defendant did send deleted important language from Minn. Stat. § 332.50 subd. 2(b)(1): "In determining the amount of the penalty, the court shall

consider the amount of the check and the reason for nonpayment." (See Letter of August 10, 2000, and Attachment.) Defendant, therefore, failed to comply with the requirements of the Minnesota Statute, and deleted the portion of the statute that would inform the consumer that civil penalties are determined by the court. In viewing the letter and the incomplete copy of the Minnesota Statute, a consumer in this case would not know that a Minnesota court may, if the parties appeared before it, award less than the full $100.00 penalty. Accordingly, Defendant's dunning letter is misleading. See, e.g. Sonmore, 2000 U.S. Dist. LEXIS 16270 at *18, *22 (concluding that the dunning letter was inaccurate in that it requested civil penalty equal to $100.00 and denied debtor the knowledge that a court has the flexibility to award a civil penalty of a lesser amount.)

**D. Bona Fide Error**

According to 15 U.S.C. § 1692k(c), a debt collector may not be held liable for a violation of the FDCPA if he shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error. Defendant argues that the bona fide error defense includes errors of law relating to the character, amount, or legal status of the debt and the debtor's liability for any interest, fee, charge, or expense incidental to the principal obligation. Nevertheless, the Eighth Circuit has made clear that the bona fide error defense is not available for a mistake about the law or a mistake in legal judgment. Picht, 236 F.3d at 451. Furthermore, Defendant has not demonstrated by a preponderance of the evidence that its failure to quote all the pertinent language of Minn. Stat. § 332.50 subd.

2(b)(1) was not intentional. Accordingly, the bona fide error defense is not available to Defendant.

**E. Damages**

Plaintiff seeks both actual and statutory damages. With respect to actual damages, Plaintiff has not pled or proven a specific amount of actual damages incurred. Indeed, the Court is not able to identify any such dollar amount from the pleadings. Further, Plaintiff failed to prove actual damages in response to Defendant's motion for summary judgement, and therefore, the Court awards none.

With respect to statutory damages, any debt collector who fails to comply with the FDCPA may be liable for "additional damages as the court may allow, but not exceeding $1,000" and "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a). In determining the amount of statutory damages, the Court must consider the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. 15 U.S.C. § 1692k(b)(1).

In this case, although Defendant sent only one letter to Plaintiff, that letter was misleading. Plaintiff alleges that she initiated one other contact with Defendant about the letter, and that a paralegal at Defendant's firm told Plaintiff the civil penalties would not be dropped. The nature of the noncompliance was Defendant's failure to state the accurate amount of debt and send a complete copy of the relevant provision in the Minnesota Statutes

along with the demand letter. Based on these factors, an award of the maximum amount of statutory damages, $1,000 in this case, would be appropriate. However, the Court is not able to determine an amount of reasonable attorney's fees and costs without an affidavit by Plaintiff's counsel outlining said fees and costs.

**CONCLUSION**

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment is **GRANTED**;
2. Defendant's Motion for Summary (Clerk Doc. No. 33) is **DENIED**;
3. Defendant shall pay to Plaintiff $1,000 in statutory damages; and
4. Plaintiff's Motion to Strike Affidavits is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: 3-7-02

Michael J. Davis
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.